■ BOLIVAR AMILL, Appellant, v LAWRENCE RUBEN COMPANY, INC., et al., Respondents-Appellants, and BLAIR PERRONE STEAKHOUSE CORP. et al., Respondents. [954 NYS2d 27]—

Orders, Supreme Court, New York County (Eileen A. Rakower J.), entered on January 11, 2011, which, inter alia, granted defendants' motions for summary judgment dismissing the complaint, denied plaintiff's cross motion to amend his supplemental bill of particulars, denied defendants Lawrence Ruben Company, Inc.'s, Duit Realty Corp.'s, and Tower Plaza Associates, L.P.'s (collectively, the landlord defendants) motion for summary judgment on their cross claims for indemnification, and granted Four Little Ones LLC's (Four Little) cross motion to dismiss the landlord defendants' cross claims, unanimously modified, on the law, to the extent of denying Four Little's motion for dismissal of the complaint as against it, reinstating plaintiff's claims against Four Little, denying Four Little's cross motion to dismiss the landlord defendants' cross claims with regard to the second cross claim, for contractual indemnification, granting the portion of the landlord defendants' cross motion seeking to convert their second cross claim against Four Little to a third-party action, and upon conversion, granting the landlord defendants' summary judgment on the third-party claim and remanding the matter for an assessment of damages, and otherwise affirmed, without costs.

Plaintiff seeks recovery for injuries allegedly sustained by him, while working at a restaurant, known as the Blair Perrone Steakhouse (Blair Perrone). Plaintiff fell from an unsecured extension ladder while exiting a mechanical room located above the kitchen. The room was being used by the restaurant for storage.

The premises was owned by Tower Plaza Associates (Tower), managed by Lawrence Ruben Company (Lawrence Ruben), and

leased to Four Little. Pursuant to a management agreement, Four Little gave Blair Perrone "responsibility for all matters relating to the operation . . . of the Restaurant," including hiring, firing and directing all restaurant employees, who were to be deemed Blair Perrone's employees, and required Blair Perrone's owners to directly supervise the restaurant. The management agreement further provided that Four Little had no right to direct the restaurant's employees and was not to be deemed their employer.

The record establishes that Blair Perrone exclusively controlled and directed plaintiff's work and was his special employer, limiting plaintiff's recovery against Blair Perrone to workers' compensation benefits (see Workers' Compensation Law §§ 11, 29 [6]; Fung v Japan Airlines Co., Ltd., 9 NY3d 351, 359 [2007]; Thompson v Grumman Aerospace Corp., 78 NY2d 553, 557-558 [1991]). While plaintiff's paychecks were issued by CJ Service, Inc., a payroll company funded by Four Little, Blair Perrone's owners formed the company simply as a payroll company. In furtherance of the management agreement, Blair Perrone, through its owners, managed and operated the restaurant and supervised and controlled plaintiff's work. Additionally, Blair Perrone was listed as a named insured on the subject workers' compensation policy (see e.g. Akins v D.K. Interiors, Ltd., 65 AD3d 946 [1st Dept 2009]).

In contrast, Four Little failed to establish, as a matter of law, that it was CJ Service's alter ego. While Four Little funded CJ Service's payroll and was covered by the same workers' compensation policy, "there is no evidence that their finances were integrated, that they commingled assets, or that the principals failed to treat the entities as separate and distinct" (Soodin v Fragakis, 91 AD3d 535, 536 [1st Dept 2012] [citation omitted]). Moreover, Four Little neither controlled nor directed CJ Service's employees (see Gonzalez v 310 W. 38th, L.L.C., 14 AD3d 464 [1st Dept 2005]).

The court properly granted Tower and Lawrence Ruben summary judgment dismissal of the complaint. While Tower had a contractual right to reenter the premises and make repairs, it had no duty to do so. Thus, Tower could only be held responsible for the condition of the premises "based on a significant structural or design defect that is contrary to a specific statutory safety provision" (Johnson v Urena Serv. Ctr., 227 AD2d 325, 326 [1st Dept 1996], lv denied 88 NY2d 814 [1996] [citations omitted]).

Tower and Lawrence Ruben met their initial burden on the motion by the submission of, inter alia, their expert's opinion

that the accident was caused by a non-structural condition and that the Building Code violations alleged were inapplicable and had not been violated. In opposition, plaintiff failed to raise a triable issue of fact as to the existence of a significant structural defect and a violation of a specific statutory safety provision. Unlike in *Bouima v Dacomi, Inc.* (36 AD3d 739 [2d Dept 2007]), plaintiff's access to the mechanical room was not limited to an unsecured ladder. Plaintiff admitted that he could have used the stationary, steel ladder for such purpose.

Finally, Tower and Lawrence Ruben established entitlement to a recovery for expenses incurred in connection with the defense of this action. While paragraph 8 of the lease limited such recovery to expenses not reimbursed by insurance, paragraph 69, of the rider, which was "[i]n addition to" the earlier provision, did not contain such a limitation, providing for indemnity "against and from all liabilities . . . costs and expenses . . . incurred by . . . reason of any accident . . . in or about the demised premises . . . except to the extent caused by the negligence or willful misconduct of Landlord." This latter provision is broader than the provision contained in the pre-printed portion of the lease, and thus, to the extent that the two provisions are inconsistent, the terms of the lease provided that the rider's language would prevail. Concur—Gonzalez, P.J., Saxe, Catterson, Acosta and Gische, JJ.